978 So.2d 177 (2007)
Anthony MONROE, Appellant,
v.
STATE of Florida, Appellee.
No. 2D05-5502.
District Court of Appeal of Florida, Second District.
September 7, 2007.
*178 James Marion Moorman, Public Defender, and Alisa Smith, Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Richard M. Fishkin, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Judge.
Anthony Monroe, who is currently serving a 100-month sentence in a federal prison, sought a final disposition of charges pending against him in the State of Florida by filing a request for final disposition pursuant to the Interstate Agreement on Detainers Act (IADA), codified as section 941.45, Florida Statutes (2004). The charges included four separate unresolved informations and two older cases in which the State had filed affidavits alleging Mr. Monroe violated his probation. When the State failed to commence a trial on the charges within 180 days, Mr. Monroe sought to dismiss the charges and to be discharged on them pursuant to the terms of Article III(a) of the IADA. The circuit court denied the motion. Thereafter, the State nol prossed the charge in *179 one information, and Mr. Monroe entered pleas of nolo contendere to the charges in the remaining three informations and pleas of admission to violating probation in the two older cases, reserving the right to appeal the denial of his dispositive motion for discharge. The circuit court entered three judgments and two orders revoking probation, imposing sentences totaling 114.9 months in prison, with a recommendation that the sentences run concurrently with the sentence Mr. Monroe is serving in federal prison.
The circuit court properly denied relief as to the orders revoking probation because the provisions of the IADA do not apply to alleged violations of probation. However, the circuit court should have granted the motion for discharge as to the two pending informations to which the motion was specifically addressed. The State failed to timely comply with the mandatory provisions of the IADA, and Mr. Monroe did not waive the protections afforded to him under the IADA. Accordingly, we remand for the circuit court to discharge Mr. Monroe for the offenses in those two cases and for resentencing as to the remaining charges.

I. MR. MONROE'S PENDING FLORIDA CASES AND THE PROVISIONS OF THE IADA
The IADA is a compact entered into by forty-eight States, the District of Columbia, Puerto Rico, the Virgin Islands, and United States to establish procedures for the resolution of one jurisdiction's outstanding charges against a prisoner of another jurisdiction. See Carchman v. Nash, 473 U.S. 716, 719, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985); see also New York v. Hill, 528 U.S. 110, 111, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000). The IADA acts as a federal law subject to federal construction. Bogue v. Fennelly, 705 So.2d 575, 578 (Fla. 4th DCA 1997) (citing Carchman, 473 U.S. at 719, 105 S.Ct. 3401). As such, state courts interpreting it are bound by United States Supreme Court precedent. Bogue, 705 So.2d at 578. The IADA is codified in Florida law as section 941.45.
In 2003, Mr. Monroe was imprisoned in a federal prison in Georgia and sought to invoke the provisions of the IADA to resolve outstanding criminal charges pending against him in Florida. In two cases, case numbers 99-16916 and 99-21500, Mr. Monroe had been placed on drug offender probation for charges of possession of cocaine and possession of marijuana and the State had filed affidavits alleging the violation of his probation. Mr. Monroe also had four pending informations in Florida: case number 00-12534, alleging possession of cocaine and possession of marijuana; case number 00-21537, alleging possession of cocaine, obstruction of justice, and possession of marijuana; case number 01-13881, alleging robbery and home invasion robbery; and case number 02-12781, alleging failure to appear.
As early as August 2003, Mr. Monroe sought a request for final disposition of the Florida cases pursuant to the IADA.[1] The request was first sent to Florida officials as early as September 11, 2003. For the purposes of Mr. Monroe's motion for discharge, however, the parties accepted April 15, 2004, as the date that Florida officials received the request.
*180 Article III(a) of the IADA requires that a prisoner be brought to trial within 180 days after he has "caused to be delivered" a request for disposition of charges pending against him in another jurisdiction, "provided that, for good cause shown in open court, the prisoner or the prisoner's counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." § 941.45. The period required by the IADA thus began on April 15, 2004, the date that Florida officials received Mr. Monroe's request. See Fex v. Michigan, 507 U.S. 43, 52, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993); see also Fuente v. State, 549 So.2d 652, 655 (Fla.1989). It was set to expire on October 12, 2004.
Our record does not indicate precisely when Mr. Monroe was transferred to a Florida jail to resolve these charges. However, it appears this occurred in September 2004. On September 23, 2004, the circuit court appointed the public defender to serve as counsel for Mr. Monroe on these matters. On October 14, 2004, 182 days after the date that Florida officials admittedly received Mr. Monroe's request for disposition, an assistant public defender appeared with Mr. Monroe at a hearing but asked to withdraw from representation of Mr. Monroe due to a conflict of interest. At this point, the 180-day period established by the IADA had expired. No mention was made of the IADA time requirements or of any concerns regarding speedy trial.
The court permitted the withdrawal of the public defender and appointed conflict-free counsel for Mr. Monroe. This attorney did not appear before the court until November 8, 2004, at which point the attorney asserted that Mr. Monroe would waive speedy trial. Thereafter, appointed counsel appeared at a number of hearings and continued to waive speedy trial, at times with Mr. Monroe present and assenting. At no time was the IADA specifically mentioned in the waiver.
Article V(c) of the IADA provides that if a prisoner is not brought to trial within the required time, "[T]he appropriate court of the jurisdiction where the indictment, information, or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect." Based upon this provision, Mr. Monroe filed a pro se "motion for dismissal of information" on January 19, 2005, and attached a letter he had mailed to his counsel indicating his desire that he wanted counsel to pursue the motion. This motion did not include a certificate of service. However, on July 29, 2005, Mr. Monroe filed a new pro se "motion to dismiss information" that included a certificate of service indicating the motion was served on the State. Both motions were addressed only to circuit court case numbers 00-12534, involving charges for possession of marijuana and possession of cocaine, and 01-13881, involving charges of robbery and home invasion robbery. There is a notation on both motions that Mr. Monroe's attorney was provided a copy of each. Both motions asserted that Mr. Monroe was entitled to dismissal of the charges and discharge because the time requirements under the IADA had expired without the State having brought him to trial. Thus, at least as of July 29, 2005, the State was aware that Mr. Monroe was claiming the protections of the IADA.
The State did not take action to set the case immediately for trial. In fact, the hearing on Mr. Monroe's motion was not held until November 1, 2005. Between the filing of the July 29 motion and the hearing on November 1, there were no further waivers of speedy trial.
*181 Mr. Monroe's appointed counsel appeared at the hearing on the motion to dismiss, but counsel and the court allowed Mr. Monroe to argue the motion.[2] Mr. Monroe argued that the periods under the IADA expired without a trial, and he was thus entitled to discharge. The State responded that appointed counsel's continued waivers of speedy trial acted as a waiver of Mr. Monroe's rights under the IADA. Mr. Monroe countered that the waivers occurred after the expiration of the 180-day period and were therefore not effective. No mention was made during this hearing of the requirements of Florida Rule of Criminal Procedure 3.191 regarding speedy trial. Because Mr. Monroe presented no case law directly on point with his argument, the circuit court denied Mr. Monroe's motion. Mr. Monroe proceeded to enter a plea at that hearing, reserving his right to appeal the denial of his motion to dismiss.
Initially, we note that Mr. Monroe's notice of appeal in this case referenced all six circuit court cases pending at the time he filed his request for final disposition under the IADA, but he is not entitled to relief on all of these cases. Although Mr. Monroe's request for final disposition acted as a request to resolve all untried indictments under article III(d) of the IADA, his subsequent motion sought discharge on only two of his pending cases, case numbers 00-12534, involving charges for possession of marijuana and possession of cocaine, and 01-13881, involving charges of robbery and home invasion robbery. Indeed, the IADA does not apply to resolve proceedings alleging violations of probation such as those pending against Mr. Monroe in case numbers 99-16916 and 99-21500, see Carchman, 473 U.S. 716, 105 S.Ct. 3401 and thus no relief was available on those cases. It is unclear why Mr. Monroe did not seek relief for case number 00-21537, involving charges of possession of cocaine, obstruction of justice, and possession of marijuana. As to the last case, number 02-12781, the State nol prossed this charge and therefore no issue has been raised regarding it. Therefore, this opinion addresses only the judgments for case numbers 00-12534 and 01-13881. The orders revoking probation for case numbers 99-16916 and 99-21500 are affirmed as well as the judgment in case number 00-21537, although we remand for resentencing on these cases based upon a new scoresheet.
Returning to the merits of Mr. Monroe's claim that he is entitled to discharge in case numbers 00-12534 and 01-13881 pursuant to the terms of the IADA, there is no dispute that Mr. Monroe was not tried within 180 days after he delivered his request for a final disposition of these matters to the prosecuting officer and the appropriate court, as is generally required by article III(a) of the IADA. Instead, the State appears to argue that either (1) the 120-day period in article IV(c)  not the 180-day provision in article III(a)  applies and runs from the later date when Mr. Monroe arrived in this state to face these charges; or (2) the 180-day period was tolled or the time limitation waived by Mr. Monroe; or (3) Mr. Monroe failed to properly invoke the protections of the IADA by filing a demand or notice similar to the notice required to obtain the protections of speedy trial required by rule 3.191(p). We address each of these arguments in turn.

*182 II. THE PROVISIONS OF ARTICLE III(A)  NOT ARTICLE IV(C)  APPLY
The parties agreed that Florida officials received Mr. Monroe's request for disposition of his pending charges by April 15, 2004. The 180-day period under article III(a) expired on October 12, 2004, yet the State had still not brought Mr. Monroe to trial by November 2005. The State argues, however, that the time limitation of article IV(c) of the IADA applies to this case. Article IV is entitled "Request for Custody and Availability." Subsection (c) states in relevant part, "In respect of any proceeding made possible by this article, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state[.]"[3] The State appears to interpret article IV(c) to apply to every case under the IADA and to effectively extend the 180-day period in article III(a) to 120 days after the prisoner is brought to the receiving jurisdiction.[4]
The State misconstrues the interplay between articles III and IV of the IADA. The provisions of article III(a) are not "trumped" or extended by the provisions in article IV(c), as suggested by the State. Instead, the two articles apply to factually distinct scenarios.
Article III of the IADA is entitled "Request for Final Disposition." It sets forth the procedure to be applied when a prisoner submits a request for the final disposition of charges for which the jurisdiction has outstanding detainers. As stated above, article III(a) requires the officials in the jurisdiction receiving the prisoner to bring the prisoner to trial on the pending charges within 180 days from receiving the request.
Article IV, however, is entitled "Request for Custody or Availability." It sets forth the procedure that officials in one jurisdiction that has a pending untried indictment, information, or complaint may use to seek temporary custody of a prisoner in another jurisdiction in order to resolve any outstanding detainers. Article IV(c) then provides the officials within the requesting jurisdiction a period of 120 days from receiving custody of the prisoner to commence any trial.
In this case, there is no dispute that the request for disposition originated with Mr. Monroe. No one suggested or offered proof that the state of Florida initiated these proceedings under article IV(c) to resolve the pending charges against Mr. Monroe. As such, the 180-day period called for in article III(a) applied, and the provisions of article IV(c) did not. Cf. Shewan v. State, 396 So.2d 1133 (Fla. 5th DCA 1980) (holding that 120-day time period provided in article IV(c) did not apply where defendant initiated state court proceedings by requesting final disposition under article III(a)).[5]See also Commonwealth *183 v. Mayle, 780 A.2d 677, 680 (Pa.Super.Ct.2001) ("Generally, Article IV applies when the prosecution initiates the return of a prisoner and Article III applies when the prisoner files an Article III request for trial."); State v. Mason, 90 N.J.Super. 464, 218 A.2d 158, 162-63 (1966) ("The 120-day period after arrival in the receiving state was not here applicable for the simple reason that the Interstate Agreement was not invoked by the prosecutor but solely by the defendant.").
III. A PRISONER CANNOT WAIVE IADA PROTECTIONS AFTER THE TIME LIMITATION HAS EXPIRED.
In the alternative, the State argues that Mr. Monroe waived the protections of article III(a) when he agreed to waive his rights to speedy trial on various occasions before filing his motion for discharge. It is clear that a prisoner can expressly waive the time limitations and protections of the IADA. In Johnson v. State, 442 So.2d 193 (Fla. 1983), a death penalty case, the Florida Supreme Court recognized an implied waiver of rights under the IADA when a prisoner agreed to continue his trial from a date prior to the expiration of the required period to a date after the expiration of that time frame. See also Brown v. Wolff, 706 F.2d 902, 907 (9th Cir.1983) ("A prisoner may waive his IAD[A] rights, however, if he affirmatively requests to be treated in a manner contrary to the procedures prescribed by the IAD[A]."); State v. Schmidt, 84 Hawai'i 191, 932 P.2d 328 (1997) (holding defendant waived protection of IADA time limits when he agreed to a trial date just beyond their expiration); State v. Montoya, 119 N.M. 95, 888 P.2d 977, 979 (1994) ("[I]mplicit in Defendant's waiver of all speedy trial time limitations was a waiver of the time limitations of the IAD[A].").
Even if we assume that Mr. Monroe's decision to waive speedy trial rights acted as an implied waiver of his rights under the IADA, those asserted waivers did not occur until after the 180-day period had expired. Although this appears to be a matter of first impression in Florida, a majority of jurisdictions addressing the issue have not permitted a waiver of IADA rights once the applicable period has expired. See, e.g., State v. Smith, 686 S.W.2d 543, 549 (Mo.Ct.App.1985) (refusing to find implied waiver when docket call at which it was alleged to have occurred was not held until well after the 180-day period of limitation expired); Mason, 218 A.2d at 163 (holding that trial court could not extend IADA time requirement after it had run); Mayle, 780 A.2d at 683 ("[I]t remains incumbent upon the Commonwealth to request a continuance prior to the expiration of the applicable time period."); see also Odhinn v. State, 82 P.3d 715, 725 (Wyo.2003) (stating, "most courts *184 that have addressed the issue have concluded continuances under the IAD[A] must be granted prior to the expiration of 180 days").
We align ourselves with these jurisdictions and hold that in order to be effective any waiver of the protections of article III(a) of the IADA must occur before the allotted time has expired. Mr. Monroe did nothing to waive his rights under the IADA prior to the expiration of the 180-day period. We conclude his waiver of speedy trial thereafter did not deprive him of the right to challenge the State's noncompliance with the IADA.

IV. THE ROLE OF RULE 3.191 IN ENFORCING THE PROTECTIONS OF THE IADA
Finally, the State argues that Mr. Monroe is not entitled to relief in this case because the procedural provisions of rule 3.191 apply to the substantive provisions of the IADA and provide the State protection from dismissal by requiring a specific demand and a "recapture" period within which to try a prisoner. The State cites the Florida Supreme Court's decision in Vining v. State, 637 So.2d 921 (Fla.1994), to support this argument. See also State v. Garza, 807 So.2d 790 (Fla. 2d DCA 2002). Although we recognize that Vining acts to provide the State a recapture period under the IADA, it does not assist the State in this case. Here, the State did not request or avail itself of the recapture period to immediately bring Mr. Monroe to trial.
Rule 3.191 provides the framework for Florida's speedy trial rule. On its face, the rule includes no language that would suggest it applies to enforce provisions of the IADA. Rather, rule 3.191(p) protects the State from "surprise" dismissals based upon technical speedy trial violations. It requires a defendant to file a pleading entitled "Notice of Expiration of Speedy Trial Time" and to serve a copy on the prosecuting authority. Thereafter, the court must hold a hearing within five days and, unless a separate exception exists, must order the defendant brought to trial within a ten-day "recapture" period.
In Vining, 637 So.2d 921, a death penalty case, the Florida Supreme Court held that a capital defendant was not entitled to discharge based upon a violation of the IADA time limitations because the recapture provisions of rule 3.191 applied and the State had successfully brought the defendant to trial within the parameters of the rule once the State was notified of the defendant's request for discharge.
To understand the holding in Vining and how it engrafted the requirements of rule 3.191 to apply to the IADA, it is necessary to examine the precedent that it specifically relied upon, R.J.A. v. Foster, 603 So.2d 1167 (Fla.1992). In R.J.A., the Florida Supreme Court considered whether the ninety-day time limitation in section 39.048(7), Florida Statutes (1991), for holding an adjudicatory hearing on a petition for juvenile delinquency could be extended by the operation of the speedy trial provisions of Florida Rule of Juvenile Procedure 8.090, which provided the state a recapture period once the juvenile filed a motion for discharge.
Justice Overton wrote the opinion for the four-justice majority, concluding that rule 8.090 applied and the recapture period was required. Justice Overton reviewed the history of speedy trial and concluded that speedy trial rules, initially adopted to protect the constitutional right to speedy trial, are procedural in nature and thus the proper realm of the courts. Justice Overton pointed to precedent holding that the individual states may enact rules prescribing a reasonable period for speedy trial consistent with the federal constitutional standard. Noting that such rules are described *185 in the precedent as "procedural," he concluded that the juvenile speedy trial rule was a procedural rule, properly within the realm of the judiciary.
Regarding the statute's express ninety-day limitation, Justice Overton stated:
We do not believe that the legislature intended by its enactment of section 39.048(7) to establish a much greater right to a speedy trial than is granted by the constitution by making the violation of a statutorily enacted time period per se prejudicial [to the defendant]. We do believe that the legislature intended to establish a "triggering mechanism" which establishes presumptive prejudice and requires consideration of other factors [before the case is dismissed]. . . . Because the time period is the triggering mechanism, we conclude that it is procedural in nature and, consequently, our rule of procedure takes precedence over the legislative enactment.
R.J.A., 603 So.2d at 1171.
Justice Barkett wrote a dissenting opinion, in which two other justices joined. She concluded that the ninety-day period in section 39.048(7) was a substantive provision that superseded the court's rulemaking authority. Justice Barkett likened the statute to a statute of limitation. "This Court has previously held that statutes of limitations create substantive rights that cannot be abrogated by rules of procedure." Id. at 1172 (Barkett, J., dissenting) (citing Lundstrom v. Lyon, 86 So.2d 771, 772 (Fla.1956)). Justice Barkett concluded that permitting the juvenile speedy trial rule to extend the ninety-day limitation was in express violation of the substantive right created by the legislature.
R.J.A. thereafter acted as precedent for the decision in Vining, which applied the reasoning of R.J.A. to hold that the criminal speedy trial rule applied to the provisions of the IADA and provided the State with a recapture period beyond the time limitation provided in the IADA. Vining, 637 So.2d at 925 (citing R.J.A., 603 So.2d 1167). Citing R.J.A., the Vining court held that the IADA provisions, like the statute in R.J.A., acted only as a "triggering mechanism" to establish that a delay in the trial of a prisoner seeking the protections of the IADA was only presumptively prejudicial. Vining, 637 So.2d at 925. As a result, the period could be extended when necessary to apply the recapture period provided for in rule 3.191. In Vining, the trial court and the prosecutor immediately acted upon the defendant's motion for discharge: a hearing was held on the motion within five days of the filing of the motion and the trial commenced within ten days of the hearing, as would be contemplated in the speedy trial setting. As a result, the Florida Supreme Court held the trial court properly denied the motion for discharge, even though the trial occurred outside of the time frame required by the IADA.
This court has applied Vining in Garza, 807 So.2d 790. In Garza, the defendant filed a "notice of violation of section 941.45, claiming that the IAD[A]'s speedy trial protection had been denied Mr. Garza." Id. at 792. The court acted immediately upon the notice and set trial for five days later. Before trial began, however, the court heard and granted Garza's motion for discharge. Id. Because Vining specifically held that the ten-day recapture period applied and the judge had denied that benefit to the state, we reversed and remanded for further proceedings.[6]
These cases effectively hold that the time limitations of the IADA may be extended if the court and the State act expeditiously *186 and in compliance with the provisions of rule 3.191(p)(3) upon receiving notice of a prisoner's request for discharge under the IADA. Vining, Garza, and Quinn all involved defendants who filed a notice of the expiration of the IADA time requirements and were then immediately brought to trial within the recapture period. In each case, the State sought or was granted the short recapture period permitted under the speedy trial rule.
In contrast, Mr. Monroe's request was not acted upon until months after he filed his motion to dismiss. His first motion was filed in January 2005, and an amended motion was filed in July. No one sought to address this motion until November 2005, when it was apparently addressed at a pretrial conference. Further, during this hearing, the State never sought the recapture period or indicated a willingness to proceed directly to trial. Although Vining, Garza, and Quinn provided the State with a recapture period upon request or action, the State cannot now be heard to complain it was deprived of a recapture period it never sought.[7]
"A defendant not brought to trial within the 10-day period through no fault of the *187 defendant, on motion of the defendant or the court, shall be forever discharged from the crime." Fla. R.Crim. P. 3.191(p)(3). Mr. Monroe, through no fault of his own, was not brought to trial in accordance with the provisions of rule 3.191(p).
Mr. Monroe established a violation of section 941.45, article III(a), one that occurred well before any action that might imply a waiver of the protections of the Act. When notified of the violation, the State took no immediate action to bring Mr. Monroe to trial. Pursuant to article III(d) of the IADA, Mr. Monroe is now entitled to dismissal of these charges.[8]
We therefore reverse the judgments in case numbers 00-12534 and 01-13881 and remand for dismissal of these charges. Our reversal in these two cases requires a resentencing in the remaining three cases, numbers 99-16916, 99-21500, and 00-21537 because the cases were all sentenced using a single scoresheet.
Reversed and remanded.
CASANUEVA and KELLY, JJ., Concur.
NOTES
[1] Notably, article III(d) of the IADA provides:

Any request for final disposition made by a prisoner pursuant to paragraph (a) shall operate as a request for final disposition of all untried indictments, informations, or complaints on the basis of which detainers have been lodged against the prisoner from the state to whose prosecuting official the request for final disposition is specifically requested.
[2] We note that although the motion was filed pro se at a time when Mr. Monroe was represented by counsel, no one sought to strike the motion. In fact, Mr. Monroe's counsel brought the motion to the court's attention and asked the court to permit Mr. Monroe to argue it.
[3] Both articles III(a) and IV(c) permit the court in the receiving jurisdiction to grant a reasonable and necessary continuance for "good cause shown in open court, the prisoner or the prisoner's counsel being present[.]" As discussed in our second point, no request for continuance was made in Mr. Monroe's case before the period under article III(a) expired. Thus this exception does not apply. Further, article VI provides that the periods under articles III and IV are tolled "for as long as the prisoner is unable to stand trial." There is no allegation that Mr. Monroe was unable to stand trial at any time since he filed his request for final disposition.
[4] The State did not present this argument to the circuit court. Perhaps as a result, our record does not make clear exactly when Mr. Monroe was transported to the state of Florida for the disposition of these charges.
[5] This interpretation is consistent with Florida cases that have applied the IADA to circumstances governed by both articles III and IV. Compare State v. Roberts, 427 So.2d 787, 790 (Fla. 2d DCA 1983) ("As Roberts was not brought to Florida until July 15, 1981, more than 180 days after section 941.45 was invoked, the circuit court's dismissal of the two informations was proper."), with State v. Ivey, 410 So.2d 636, 637 (Fla. 2d DCA 1982) ("Because the state initiated the procedure against appellee by transmitting to the Federal Institution a request for custody pursuant to section 941.45(4)(a), Florida Statutes (1979), the state was required to commence trial within 120 days after arrival of the prisoner."). We recognize there is some language in Schuhart v. State, 647 So.2d 1049, 1050 (Fla. 5th DCA 1994), and in State v. Minnick, 413 So.2d 168, 169 (Fla. 2d DCA 1982), that appears to intermingle the two articles in a manner similar to the State's argument in this case. However, neither of those cases addressed the specific application of either period. In Schuhart, 647 So.2d at 1050, the court concluded that a continuance was properly granted and extended the appropriate period. In Minnick, 413 So.2d at 169, this court held that the appropriate period was tolled by the prisoner's unavailability for trial.
[6] The only other case to comment on these issues is Quinn v. State, 713 So.2d 1046 (Fla. 5th DCA 1998). In Quinn, the defendant filed a "demand for speedy trial" under the IADA. Id. at 1047. The trial court acted upon it immediately, employing the procedure in rule 3.191, and set the trial within the ten-day recapture period. On appeal, Quinn argued that the recapture period did not apply. The Fifth District explained:

Appellant contends that Vining is erroneous. Without citing any authority, he contends that the decision is violative of the Separation of Powers doctrine in the Constitution of the State of Florida and of the Compact and Due Process clauses in the Constitution of the United States. Relying upon section 918.015(2), Florida Statutes (1997), he contends that the supreme court is required to provide procedures assuring that the right to a speedy is realized. Appellant maintains that the supreme court does not have the authority to create procedural rules to implement the IAD[A]'s speedy trial right. Moreover, he distinguishes Vining on the ground that it is based upon a constitutional right to speedy trial whereas the IAD[A] is based upon a contractual right to speedy trial, as agreed upon by the forty-six states, the District of Columbia and the United States government. Appellant concludes by asking this court to certify to the supreme court the question of whether Vining should be reconsidered.
We find that this appeal is without merit. The supreme court resolved the issue on appeal in Vining by holding that the statutory time-periods set forth in the IAD[A] may be considered in conjunction with Florida Rule of Criminal Procedure 3.191. Under the doctrine of stare decisis, this court is bound by supreme court precedent.
713 So.2d at 1049.
[7] This unique situation perhaps highlights the difficulty in engrafting the Florida speedy trial rule onto the requirements of the IADA. The speedy trial rule specifically calls for the defendant to file a "notice of expiration of speedy trial time." The rule anticipates the filing of a uniformly titled document in order to assist courts and prosecutors in identifying the matter as one requiring immediate action. In this case, of course, speedy trial had been waived and no such notice could be filed. Instead, Mr. Monroe filed a motion specifically identifying the violation of the IADA. The State has not challenged the manner in which Mr. Monroe sought discharge. Moreover, as noted above, the State did not seek the recapture period once the urgency of the motion was made clear, either when the motion was served upon it or at the hearing. We decline under these circumstances to hold that Mr. Monroe must file a specifically titled document in order to invoke the protections of the IADA and request discharge. However, to prevent future confusion regarding the interplay of the IADA and rule 3.191, the Florida Bar's Criminal Procedure Rules Committee should consider whether a specific rule, or an amendment to the current rule, is necessary to specifically address the requirements of the IADA. In the interim, prosecutors and circuit court judges may need to take affirmative measures to assure similar prosecutions do not fall between the cracks.
[8] We note that the dismissal of these charges may have little practical effect. The record reflects that Mr. Monroe was serving a 100-month sentence in federal prison. The 114.9-month sentences imposed here were intended to run concurrently with the federal sentence.