GRIFFIN, J.
 

 Derrick Lamont Parks [“Parks”] appeals his conviction and sentence for murder in the second degree with a firearm, robbery with a firearm, and possession of a firearm by a convicted felon. Parks argues that the trial court erred by denying his motion for discharge, which was based on the State’s failure to bring him to trial within 180 days, following his request for final disposition under the Interstate Agreement on Detainers Act [“IADA”], Section 941.45(a), Florida Statutes (2004). We affirm.
 

 In December of 2003, the Marion County Sheriff sent a letter to the Oklahoma State Department of Corrections requesting that a detainer be placed on Parks with respect to Florida arrest warrants under the name of “Derrick Dickerson.” Parks soon after filed a “Motion for
 
 *859
 
 Speedy Trial or Dismissal of Charges,” which the trial court denied on the ground that it was “premature.” In December of 2004, Parks filed a “Request for Final Disposition,” again using the name of “Derrick Dickerson.” It is a bare-bones document, but it does reference IADA. Parks enclosed with this request a copy of what is denominated an “Oklahoma State Department of Corrections-Consolidated Record Card” [“the Record Card”], which lists his Oklahoma convictions and sentences. Parks also enclosed an undated, untitled sheet with hand-written entries under the “time served” column and under the “remaining” column. He also attached a “New Arrival/Adjustment Review/Earned Credit” level form that appears to have been generated on October 8, 2004, and which shows “Days Remaining” and a “Parole Date.”
 

 The trial court entered an order to show cause, asking for “a response from the State of Florida on whether the Defendant has ‘substantially complied’ with the IAD and how the State would like to proceed.” The State filed a response to the show cause order, arguing that Parks failed to substantially comply with the requirements of the IADA because he failed to follow the statutorily prescribed procedure under section 941.45, Article 111(a). The State quoted the statutory language, noted that the statute requires that certain materials be given to the warden or other prison official, who is then responsible for forwarding them and asserted that these “are necessary provisions of the law and represent the confirmation by the holding state that it "will participate in the terms of the Interstate Agreement on Detainers (IAD).” The State said: “To date, the defendant has failed to submit any document that confirms that the State of Oklahoma has been formally advised that the defendant desires to initiate disposition of his Florida charges.” The response explained:
 

 8. The failure of the defendant to follow the procedure prescribed by the statute is evidenced by what appears to be a photocopy of a “Post-It” note appearing on the face of one of the Oklahoma State DOC documents.... The note bears the address of the Marion County Sheriffs Office under the word “Warrants”, together with the notations “Sent for 1-9-04 Marion Co. S/O” and “Do IAD when warrant rec’d.” It is clear from the note, that the prison holding the defendant is aware of the proper procedure and appears to be acting accordingly.
 

 4. Absent confirmation of the State of Oklahoma’s intention to participate in the IAD, the defendant cannot be found to have “substantially complied” with the law.
 

 The trial court then entered a second order to show cause:
 

 The Court issued an Order to Show Cause to the State requesting the State respond to whether the Defendant had substantially complied with the requirements of the IAD. The State replied that the Defendant had not substantially complied with § 941.45, Fla. Stat. because the State of Oklahoma officials have not sent the necessary documents required by the statute. However, case law suggests that substantial compliance may result from the Defendant sending the documents containing the necessary information.
 
 See for example, State v. Roberts,
 
 427 So.2d 787 (Fla. 2d DCA 1983). The Defendant’s Request for Disposition was filed on December 7, 2004 which may have begun the 180 day disposition period if the Defendant has substantially complied. The Court would like an additional response from the State on this issue.
 

 
 *860
 
 Thereafter, the trial court entered an order saying that the court would assume the State intended to take no further action on Parks’ request for final disposition because the State had not yet responded to its second order to show cause.
 

 On May 13, 2005, the State filed a motion to determine the status of Parks’ request for final disposition. It alleged in part:
 

 10. On March 17, 2005, the State received another “Request for Final Disposition” filed by the defendant. In this new request, the defendant correctly certified that he had attached the necessary “Certificate of Inmate Status” and “Offer of Temporary Custody” as required by the IAD. The State received this request on March 17, 2005.
 

 11. The State of Oklahoma forwarded the “Certificate of Inmate Status” and an “Offer to Deliver Temporary Custody” to the State of Florida.
 

 12. On March 21, 2005, the State signed the “Prosecutor’s Acceptance of Temporary Custody” in response to the defendant’s new request for disposition. The court signed this same certificate on March 24, 2005. The defendant was then extradited to Florida.
 

 The State argued that Parks failed to substantially comply with the IADA when he filed his initial request for final disposition in December 2004. The State relied mainly upon
 
 State v. Fay,
 
 763 So.2d 473, 475 (Fla. 4th DCA 2000) and
 
 State v. Culligan,
 
 454 So.2d 700 (Fla. 4th DCA 1984). The State asked the trial court to strike Parks’ December 2004 request for final disposition and to “determine that the 180 day period during which the defendant must be brought to trial began to run on March 17, 2005, the date the State received the second request.”
 

 The trial court conducted a hearing on the State’s motion on May 17, 2005. At the conclusion of the hearing, the trial court ruled that the 180 days began to run with the March 17, 2005, final disposition request.
 

 On July 21, 2005, the trial court held a pretrial status conference during which defense counsel requested a delay. The State did not object to the continuance, but asked that the defense waive speedy trial as well as “the 180-day speedy trial for intrastate agreement on detainers.” Defense counsel stated that he had spoken with Parks and that Parks was in agreement to waiving speedy trial. When asked by the trial court whether that was correct, Parks answered: ‘Tes, sir.”
 

 Subsequently, on May 22, 2008, Parks filed a motion to discharge and dismiss the charges, claiming a violation of the IADA, and his right to a speedy trial. He contended that his initial request for final disposition in December 2004 “substantially complied” with the requirements of the IADA and because the 180 days had expired in June 2005, he was entitled to discharge. The trial court denied the motion. Parks then entered a plea of no contest, reserving his right to appeal the court’s denial of the motion to dismiss based on the IADA issue. The trial court sentenced Parks to a thirty-year term for murder in the second degree with a firearm and for robbery with a firearm, and to a fifteen-year term for possession of a firearm by a convicted felon.
 

 Parks argues on appeal that the trial court erred in denying his motion to discharge because his December 2004 request for final disposition substantially complied with the IADA requirements, and his waiver of speedy trial was not binding because it did not occur until after expiration of the 180 day period within which the State had to bring him to trial. We do not address the waiver issue because we agree with the
 
 *861
 
 State that Parks’ December 2004 request for final disposition does not substantially comply with the IADA requirements for a Request for Final Disposition.
 

 Section 941.45, Florida Statutes, entitled “Interstate Agreement on Detainers,” provides in part:
 

 ARTICLE III
 

 Request for Final Disposition
 

 (a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he or she shall be brought to trial within 180 days after the prisoner shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer’s jurisdiction written notice of the place of his or her imprisonment and the prisoner’s request for a final disposition to be made of the indictment, information, or complaint; provided that, for good cause shown in open court, the prisoner or the prisoner’s counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.
 

 (b) The written notice and request for final disposition referred to in paragraph (a) shall be given or sent by the prisoner to the warden, commissioner of corrections, or other official having custody of the prisoner, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.
 

 According to the express terms of section 941.45, in addition to written notice of the place where Parks was imprisoned and Parks’ request for final disposition, the State and the trial court also had to be provided with “a certificate of the appropriate official having custody of ... [Parks], stating the term of commitment under which ... [Parks was] being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of ... [Parks], and any decisions of the state parole agency relating to ... [Parks].” Also, Parks was to give the written notice and request for final disposition “to the warden, commissioner of corrections, or other official having custody of ... [him], who [was to] promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.” Additionally, under Article V of the IADA, this notice must be accompanied by an offer from the custodial authority to relinquish temporary custody to the requesting state.
 

 The State asserts that Parks did not substantially comply with the IADA requirements because he, rather than an appropriate official, forwarded the request, no certificate of an appropriate Oklahoma official was provided, the submittal was incomplete and there was no offer to deliver custody. Florida courts agree that substantial compliance with section 941.45(a) is sufficient.
 
 See State v. Roberts,
 
 427 So.2d 787, 788 (Fla. 2d DCA 1983) (“substantial compliance with section 941.45(3)
 
 *862
 
 will enable a defendant to seek relief under ... [the IADA]”);
 
 Fay,
 
 763 So.2d at 475 (“[s]ubstantial compliance with the requirements of section 941.45(3) is sufficient to invoke the benefits of the IAD”);
 
 see also Halle v. State,
 
 914 So.2d 470, 471-72 (Fla. 5th DCA 2005).
 
 Cf. Torres-Arboledo v. State,
 
 524 So.2d 403, 412 (Fla.1988).
 

 In
 
 Roberts,
 
 the defendant, rather than corrections officials, had sent documents that did not include a certificate of inmate status. 427 So.2d at 789. The Second District Court of Appeal found that the defendant had nevertheless “substantially complied” with section 941.45(3). The
 
 Roberts
 
 court explained:
 

 In the case
 
 sub judice,
 
 Roberts substantially complied with section 941.45(3) by sending the documents which were received by the state attorney’s office on December 15, 1980. These documents informed the Pasco County officials which charges were at issue, notified them of Roberts’ current place of incarceration, requested final disposition of the charges pursuant to the IADA, and waived extradition.
 
 The memorandum from the New York prison officials to Roberts, which RobeHs sent to the Pasco officials, contained the information which is usually supplied in a certificate of inmate status.
 

 We note that Pasco County had the necessary information required to process the detainer charges; also, the appropriate Florida court received a copy of the documents sent to the Pasco County prosecutor. Therefore, as both the prosecutor and the appropriate court had actual notice of the necessary information, they should have been aware that the 180-day time period had started running. This time period was not tolled by the August 1981 motion by Roberts for continuance; the time limit had already expired.
 

 Id.
 
 at 790 (emphasis added).
 

 More recently, in
 
 Fay,
 
 the Fourth District Court of Appeal found that the defendant did
 
 not
 
 substantially comply with section 941.45(3), explaining:
 

 We conclude that Appellee’s request did not substantially comply with section 941.45(3) because it was sent by Appel-lee and was not accompanied by a certificate of the prison official holding him in custody. Further, the request did not contain required information, such as the term of commitment, the time already served, the time remaining to be served, the amount of good time earned, or the time of parole eligibility.
 
 See State v. Culligan,
 
 454 So.2d 700 (Fla. 4th DCA 1984)(order dismissing information reversed where request for disposition was unaccompanied by information required by the statute).
 
 See also Torres-Arboledo v. State,
 
 524 So.2d 403 (Fla.1988);
 
 Coit v. State,
 
 440 So.2d 409 (Fla. 1st DCA 1983).
 

 763 So.2d at 475.
 
 [1]
 

 In this case, Appellant’s submission did not substantially comply with the require
 
 *863
 
 ments of section 941.45(a). The expressly stated purpose of the IADA is to encourage the orderly and expeditious disposition of outstanding charges and to eliminate uncertainty. § 941.45 (Article I), Fla. Stat. (2004). To that end, the IADA has established very simple and clear procedures that must be followed; however, other than a clear request for final disposition, Appellant complied with none of them. Rather than have his request accompanied by a certifícate of the custodial authorities detailing the information required and offering to relinquish custody to Marion County, Florida, authorities, Appellant himself forwarded a hodge-podge of what
 
 appear
 
 to be prison records of various dates, containing snippets of information which may, or may not, with sufficient study, calculation and interpretation, be adequate to allow the recipient to figure out the answers for himself. Validation of this minimal level of IADA compliance is neither desirable nor necessary. As the record demonstrates, after the State objected to the December 2004 request, Appellant sent a second request that fully complied with the IADA. This time, Parks used the standard IADA form, “Inmate’s Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations or Complaints,” and attached the Certificate of Inmate Status form, completed by the Lawton Correctional Facility in Oklahoma and executed by its warden. Accordingly, all the required information is plainly set forth as of the Certificate date. Also included is the required offer to deliver temporary custody to Marion County, executed by the Oklahoma warden.
 

 The Request for Final Disposition procedure in the IADA is more than just a notice provision; it is expressly designed to expedite, to eliminate uncertainty and to provide a means for the orderly disposition of a prison inmate’s other charges. These goals are not met if the procedure is ignored. If the custodial authority’s input is circumvented by the inmate, the prosecuting jurisdiction is left to pore over whatever the inmate transmits in hopes of cobbling together the required information. Confidence in the accuracy of the information provided is not high and communication between the requesting and custodial authorities is thwarted. This creates the kind of uncertainty that has dogged this case for years and leads to the kind of
 
 post hoc
 
 debates over whether a plainly non-compliant submittal was nevertheless “substantial enough” to prevent prosecution of serious crimes — in this case, homicide— that we face today. Given the ease with which satisfactory compliance with section 941.45 can be met and the importance of doing so, we are unwilling to say that merely putting Marion County authorities on notice of his wishes with a defective Request for Final Disposition is enough. Park’s first request met neither the letter nor the intent of the statute.
 

 AFFIRMED.
 

 SAWAYA and EVANDER, JJ., concur.
 

 [1]
 

 . In
 
 Halle,
 
 this Court disagreed with the State's contention that the absence of IAD documents from Massachusetts' prison officials in the files of the Hernando County clerk and the failure of the defendant to use standard IAD forms avoided application of the statute. 914 So.2d at 471. We explained:
 

 The record amply demonstrates substantial compliance with the IAD, and clearly shows that both the statewide prosecutor and the circuit court in Hernando County had actual notice of his IAD disposition request, and that both took steps toward disposing of the case.
 
 See Torres-Arboledo v. State,
 
 524 So.2d 403 (Fla.1988);
 
 State v. Roberts,
 
 427 So.2d 787 (Fla. 2d DCA 1983).
 

 Id.
 
 at 471-72.
 
 Halle,
 
 however, involved a section 941.45(d) issue. We noted in the opinion that an IADA request had previously been sent to Marion County and to the state
 
 *863
 
 wide prosecutor. Moreover, unlike the present case, where the State has consistently contested the sufficiency of the request, in
 
 Halle,
 
 the statewide prosecutor handling the Hernando County prosecution and the trial court treated the request as valid and proceeded accordingly.