427 So.2d 787 (1983)
STATE of Florida, Appellant,
v.
Jeffrey ROBERTS, Appellee.
Nos. 82-28, 82-29.
District Court of Appeal of Florida, Second District.
March 4, 1983.
*788 Jim Smith, Atty. Gen., Tallahassee and William E. Taylor, Asst. Atty. Gen., Tampa, for appellant.
Leonard H. Holton, Dade City, for appellee.
RYDER, Judge.
The state appeals from the trial court's order dismissing two informations filed against one Jeffrey Roberts. The issue presented is whether there must be strict or substantial compliance with the Interstate Agreement on Detainers Act (IADA), section 941.45(3), Florida Statutes (1979), for the 180-day time period to begin to run. Under the facts presented, we hold that substantial compliance with section 941.45(3) will enable a defendant to seek relief under that Act.
On December 18, 1979, Roberts was arrested in New York on New York charges. He was placed in the Nassau County Jail. Thereafter, the Pasco County State Attorney's Office received information about this arrest. On January 8, 1980, subsequent to a decision to seek extradition, two informations were filed in Pasco County charging Roberts with two counts of burglary and six counts of grand theft. Later in January, Roberts sent to the courthouse in Zephyrhills, Florida a letter informally requesting a speedy trial on the Florida charges. This letter was forwarded to the Pasco County State Attorney's Office. Extradition was not possible as of March 1980 as Roberts was awaiting sentencing on the New York charges.
On March 7, 1980, the state attorney's office sent a letter to Nassau County, New York police officials confirming that the Florida charges were being used as a detainer against Roberts and requesting notification upon disposition of the New York charges. Roberts was sent a copy of this letter.
On July 21, 1980, the Pasco County State Attorney's Office received another handwritten letter from Roberts which had been sent first to the Attorney General's Office in Tallahassee. In this letter, Roberts invoked *789 his right to a speedy trial under the IADA; however, Roberts referred to the language of an inapplicable section.
On November 21, 1980, Pasco County officials received a letter from the Nassau County Police Department indicating that Roberts had been sentenced on the New York charges to a term of one and one-half to three years at Ossining Correctional facility. The letter provided the address of Ossining and stated that a copy of the fugitive warrant would be sent to the prison with the files.
After one week, Roberts was transferred to Downstate Correctional facility at Fishkill, New York. Shortly thereafter, the state attorney's office wrote to Ossining prison officials requesting a release date of Roberts or the date on which he would be available for extradition. The record does not reflect whether there was a response to this letter.
On December 15, 1980, the Pasco County State Attorney's Office received three documents from Roberts. The first was a handwritten copy of the form used to inform Roberts that a detainer had been lodged against him. The second form, also handwritten, expressly requested final disposition under the IADA and waived extradition. This form advised the state attorney's office of Roberts' location at Downstate; a request was included that the form be forwarded to the proper offices if necessary. The third document was a memorandum sent by the prison authorities to Roberts which stated jail credit time, a conditional early release date, a maximum incarceration date and a parole eligibility date. These forms were sent by Roberts, not by the New York corrections officials. Hence, there was no certificate of inmate status.
In late December 1980, Roberts was transferred to the Otisville (New York) Correctional Institute. In April 1981, Roberts caused to be sent, through Otisville officials, a form demanding final disposition of the charges against him. An official certificate of inmate status was also sent. These were received by the Pasco County State Attorney's Office on April 27, 1981.
Roberts remained at Otisville until July 15, 1981. He was then returned to Florida. Trial on the pending Florida charges was set for September 27, 1981. In August 1981, counsel for Roberts filed a motion for continuance; this was granted. On October 29, 1981, defense counsel filed a motion to dismiss the two informations asserting that the state attorney's office failed to comply with the speedy trial requirements under the IADA.
A hearing was held on November 10, 1981. On December 8, 1981, the trial court granted Roberts' motions to dismiss. The state filed this appeal.
The issue of strict versus substantial compliance with the requirements of section 941.45(3) has not been specifically addressed before in Florida. In Cox v. State, 389 So.2d 1028 (Fla. 5th DCA 1980), the court considered whether a defendant had properly invoked his right to a speedy trial under Florida Rule of Criminal Procedure 3.191(b)(3). The court found that although a letter sent by the defendant did not comply with all the requirements of the rule, it was sufficient to constitute a proper demand.
To allow the state to hide behind the technical requirements of the rule would undermine the constitutional guarantee of a speedy trial.
* * * * * *
This omission, while technical, is not substantive and should not excuse the state's failure to commence the action.
389 So.2d at 1030. It should be noted that while the defendant in Cox did not expressly invoke the IADA in his letter, the court there discussed that statute in connection with the speedy trial rule.
A majority of the foreign jurisdictions which have addressed the issue have found that substantial compliance by a defendant can be sufficient to invoke the benefits of the IADA. They have not, however, agreed on what will be substantial compliance. See State v. Seadin, 181 Mont. 294, 593 P.2d 451 (1979); McBride v. United States, 393 A.2d 123 (D.C. 1978), cert. denied, 440 U.S. 927, *790 99 S.Ct. 1260, 59 L.Ed.2d 482 (1979); Rockmore v. State, 21 Ariz. App. 388, 519 P.2d 877 (1974); People v. Uplinger, 69 Ill.2d 181, 13 Ill.Dec. 27, 370 N.E.2d 1054 (1977); Ekis v. Darr, 217 Kan. 817, 539 P.2d 16 (1975); State v. Barnes, 273 Md. 195, 328 A.2d 737 (1974); State ex rel. Saxton v. Moore, 598 S.W.2d 586 (Mo. Ct. App. 1980); Pittman v. State, 301 A.2d 509 (Del. 1973); McQueary v. State, 21 Wash. App. 658, 585 P.2d 1197 (1978); People v. Randolph, 85 Misc.2d 1022, 381 N.Y.S.2d 192 (Crim.Ct. 1976); Commonwealth v. Merlo, 242 Pa.Super. 517, 364 A.2d 391 (1976); see generally 98 A.L.R.3d 160, 206-207 (1980).
In short, in adopting a substantial compliance test, these courts have relied upon the statutory provision of the IADA mandating a liberal construction in order to effectuate its purposes. Florida has adopted the liberal construction provision. § 941.45(9), Florida Statutes (1979). The purpose of the Act, as stated in the statute, is to encourage the expeditious and orderly disposition of outstanding foreign charges lodged against a prisoner which obstruct his treatment and rehabilitation. § 941.45(1).
In State ex rel. Saxton v. Moore, 598 S.W.2d 586 (Mo. App. 1980), the Missouri Court of Appeals succinctly enunciated why substantial compliance is sufficient, although it dealt specifically with the question of whether the appropriate court received notice of the disposition request.
The courts have generally held that the Agreement does not require literal and exact compliance by the prisoner with the directions of the Agreement in order to avail itself of its benefits. If the prisoner makes a good faith effort to bring himself within the Agreement's purview, and omits nothing essential to the Agreement's operation, then his failure of strict compliance will not deprive him of its benefits.
598 S.W.2d at 590. Cf. Lewis v. Boone, 418 So.2d 319 (Fla. 1st DCA 1982) (holding that the state's substantial compliance with the Uniform Interstate Extradition Act, section 941.14, et seq., Florida Statutes (1981), validated a two-day late Governor's extradition warrant).
In the case sub judice, Roberts substantially complied with section 941.45(3) by sending the documents which were received by the state attorney's office on December 15, 1980. These documents informed the Pasco County officials which charges were at issue, notified them of Roberts' current place of incarceration, requested final disposition of the charges pursuant to the IADA, and waived extradition. The memorandum from the New York prison officials to Roberts, which Roberts sent to the Pasco officials, contained the information which is usually supplied in a certificate of inmate status.
We note that Pasco County had the necessary information required to process the detainer charges; also, the appropriate Florida court received a copy of the documents sent to the Pasco County prosecutor. Therefore, as both the prosecutor and the appropriate court had actual notice of the necessary information, they should have been aware that the 180-day time period had started running. This time period was not tolled by the August 1981 motion by Roberts for continuance; the time limit had already expired.
The state's argument that it should not be required to "chase" a defendant who seeks to invoke the provisions of the IADA is without merit under the facts of this case. See State v. Minnick, 413 So.2d 168 (Fla. 2d DCA 1982). Roberts had not been transferred out of the New York state prison system to another jurisdiction's prison system; he remained in the New York system throughout the pertinent time period.
As Roberts was not brought to Florida until July 15, 1981, more than 180 days after section 941.45 was invoked, the circuit court's dismissal of the two informations was proper.
We, therefore, AFFIRM the dismissal entered below.
OTT, C.J., and DANAHY, J., concur.