PER CURIAM.
This is a petition for writ of prohibition seeking the petitioner’s immediate discharge from the three charges currently pending against him, for one count each of first-degree murder, attempted first-degree murder, and grand theft auto. The petitioner asserts that his speedy trial rights under the Interstate Agreement on Detainers Act (“IADA”) have been violated. We disagree, and we deny the petition.

Background

The petitioner was arrested on September 11, 2011, in Dorchester County, South Carolina, on charges of kidnapping, carjacking, and armed robbery. On the same date, a felony warrant issued in Duval County, Florida, for charges of grand theft auto and attempted murder. On April 13, 2012, the petitioner entered a guilty plea to the South Carolina charges, and the Jacksonville Sheriffs Office provided the Dorchester County Sheriffs Office with a detainer requesting a hold on the petitioner for the Florida charges on April 16, 2012.
The petitioner mailed a handwritten letter on June 28, 2012, to the Jacksonville Sheriffs Office. In that letter, the petitioner noted that he had charges pending in Duval County, and expressed that he was “serious about getting them taken care of as soon as possible.” The letter advised that the petitioner was at that time in the custody of the South Carolina Department of Corrections, and stated that the petitioner was being held at Ridgeland Correctional Institution. The petitioner requested repeatedly that the Duval County charges be resolved as soon as possible.
*324 On July 3, 2012, the Jacksonville Sheriffs Office responded with a letter stating that “[t]he Records Section of the Jacksonville Sheriffs Office is unable to provide you with the extradition processing information you have requested. The Correctional facility you are currently in should be able to assist you in contacting the appropriate section for your inquiries.”
The petitioner then submitted an inmate request directed to the Warden at Ridge-land Correctional Institution in South Carolina on. October 11, 2012, which indicated that it was the petitioner’s “formal request for your assistance in reaching the final resolution” of the Florida charges, and indicated that the request was “being made pursuant to the interstate agreement for detainers”, codified in the South Carolina Code of Laws at section 17-11-30, Article III. The request bore a handwritten note under the “Disposition by Staff Member” section which read, “Please process for IAD. He has detainers for the State of Florida.”
After apparently receiving no response to the October 11, 2012, inmate request, the petitioner filled out: another inmate request on January 7, 2013, also directed to the Warden at Ridgeland Correctional Institution. The second request referred back to the October 11, 2012, request, and again indicated that it was the petitioner’s formal request for disposition of the Duval County charges per the IADA. The “Disposition by Staff Member” section on this second request read, “INMATE DOZIER: Your request is being handled by Classification.” Neither the October 11, 2012, nor the January 7, 2013, requests were served on the Jacksonville Sheriffs Office, - the Duval County Circuit Court, or the Fourth Circuit State Attorney’s Office.
The petitioner attempted to file a pro se motion to dismiss the Duval County charges per the IADA on August 29, 2013. The state obtained a three-count indictment against the petitioner on November 1, 2013, for first-degree murder, attempted first-degree murder, and theft of a motor vehicle. Counsel was appointed to represent the petitioner on the Duval County charges, and counsel filed a renewed motion to dismiss per the IADA on March 27, 2014. The trial court denied both motions to dismiss, finding that the first motion was procedurally barred because it was filed before the indictment, and there were accordingly no charges to dismiss at the time the first pro se motion to dismiss was filed. As to the second motion to dismiss, filed by counsel, the court found that the indictment was filed on November 1, 2013, and the defendant, was not arrested until January 15, 2014 — the day he arrived in Duval County on the Florida charges. The court found that the petitioner’s speedy trial rights attached on the date of the indictment, November 1, 2013, and the petitioner was therefore required to be brought to trial on or before April 25, 2014. That date had not yet passed when the order denying the motion to dismiss was rendered on April 8, 2014, and the motion was accordingly denied.
In the instant petition for writ of prohibition, .the petitioner asserts that he is entitled to a discharge from all Duval County charges because he was entitled to a final disposition of the charges within 180 days of his IADA request. Under the petitioner’s reasoning, because he made his first request on June 28, 2012, his second request on October 11, 2012, and his third request on January 7/ 2013, he was required to be brought to trial by July 6, 2013, at the latest.

Analysis

 The IADA “is a compact entered into by forty-eight States, the District of Columbia, Puerto Rico, the Virgin Islands, and United States to establish procedures *325 for the resolution of one jurisdiction’s outstanding charges against a prisoner of another jurisdiction.” Monroe v. State, 978 So.2d 177, 179 (Fla. 2d DCA 2007) (citations omitted). Article 111(a) of the IADA provides:
Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he or she shall be brought to trial within 180 days after the prisoner shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer’s jurisdiction written notice of the place of his or her imprisonment and the prisoner’s request for a final disposition to be made of the indictment, information, or complaint; provided that, for good cause shown in open court, the prisoner or the prisoner’s counsel being presént, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having ■ custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.
§ 941.45, Fla. Stat. (2012). Article 111(b) of the IADA requires that “[t]he written notice and request for final disposition referred to in paragraph (a) shall be given or sent by the prisoner to the warden, commissioner of corrections, or other official having custody of the prisoner, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.” Id. Once a request has been made per this provi-' sion, if the state fails to bring a defendant to trial within 180 days, dismissal of the detainer charges is mandated. See, e.g., State v. Roberts, 427 So.2d 787 (Fla. 2d DCA 1988).
We conclude that relief is not warranted in this case for two reasons. First, the state argues that at the time of the petitioner’s IADA request, even though a detainer had' been filed, no “indictment, information, or complaint” yet existed that would trigger the IADA’s application. No court of this state appears to have yet answered the question of whether a mere “detainer” pursuant to a felony arrest can constitute a “complaint” per the IADA. This is a question without a cleár answer. For example, in United States v. Bottoms, 755 F.2d 1349 (9th Cir.1985), the court held that a defendant was not entitled to a final disposition under the IADA. where he had not been formálly charged by indictment, information, or complaint. By contrast, the Court of Spe- • cial Appeals of Maryland deemed the approach in Bottoms to be “hypertechnical,” holding that a felony arrest warrant de-tainer is an “untried complaint” for purposes of the IADA. See State v. Smith, 73 Md.App. 378, 534 A.2d 371 (Md.Ct.Spec.App.1987). In Crawford v. State, 669 N.E.2d 141 (Ind.1996), the Supreme Court of Indiana followed Bottoms rather than Smith, noting that the'common and correct practice was to give detainers a narrow scope. In State v. Moore, 774 S.W.2d 590 (Tenn.1989), the Supreme Court of Tennessee, however, followed Smith in holding that an arrest warrant or detainer is sufficient to invoke the protections of the IADA because that holding was consis *326 tent with “the general practice of prosecuting officials in this and other states,” though noting its concerns that “[p]roceed-ing on a bare warrant, however, obviously can produce situations of unusual complexity as shown by the facts of the instant case.” Id. at 597.
We agree with the court’s analysis in Bottoms and adopt that line of reasoning. The court in Bottoms defined “complaint” narrowly, as a term of art excluding warrants and detainers issued thereupon. 755 F.2d at 1350. The existence of the word “untried” in the IADA clause in question supports the conclusion that the IADA cannot be triggered solely by the filing of a detainer pursuant to a felony warrant. There is no such thing as an “untried warrant” or an “untried detainer” because a defendant may not be tried on a warrant or a detainer. The use of the word “untried” indicates that the words “indictment,” “information,” and “complaint” are meant to refer to charging documents. The word “complaint” refers to a type of a charging document, and does not appear to have been intended to broaden the scope of the IADA provision in question beyond charging documents to arrest warrants and detainers. As the court in Bottoms concluded:
... its use as the final of a series of three technical terms, all related in the meaning, precludes accepting his argument. The principles of ejusdem gener-is and common sense dictate that “complaints” be read as a legal word of art .... [t]he use of “untried” as the qualifier for all three words supports this conclusion.
755 F.2d at 1350. We disagree with Smith, which held that this approach “misinterpreted the statute, in favor of a strained reliance upon a rule that forced a conclusion that is contrary to the clear legislative intent.” 534 A.2d at 373. To the contrary, we conclude that a structured and reasoned approach lead to the conclusion reached in Bottoms, which precludes relief in this case.
Even if we are mistaken on this point, relief is unavailable for a second reason. The IADA requires “substantial compliance” with the requirements of a request for a final disposition to trigger the I ADA’s protections. See, e.g., State v. Fay, 763 So.2d 473, 475 (Fla. 4th DCA 2000). Here, the petitioner failed to demonstrate substantial compliance with the IADA’s requirements. First, as the trial court’s order denying the petitioner’s motion to dismiss correctly noted, none of the IADA requests were served on the prosecuting authority. To the extent that the second and third requests were served on South Carolina prison officers, who failed to forward them to officials in the state of Florida, substantial compliance is still not demonstrated because Florida officials cannot be held liable for the South Carolina officials’ inaction. See Parker v. State, 539 So.2d 1168 (Fla. 1st DCA 1989) (holding that, where a defendant provided an IADA notice to Pennsylvania correctional officers and those officers failed to forward it, “[s]ince the lack of notice was not due to any action or inaction on the part of Florida officials, the state of Florida was not precluded from proceeding against appellant”) (citing Welch v. State, 528 So.2d 1236 (Fla. 1st DCA 1988); Coit v. State, 440 So.2d 409 (Fla. 1st DCA 1983); Williams v. State, 426 So.2d 1121 (Fla. 1st DCA 1983)). And although the first “notice” — the letter mailed by the petitioner on or about July 10, 2012-was served on the Jacksonville Sheriffs Office, despite mentioning the petitioner’s desire for a speedy disposition of the Duval County charges, it was neither served on the prosecuting authority nor the lower tribunal, nor was it accompanied by a certificate *327 from the petitioner’s correctional institution.

Conclusion

The petitioner’s requests for a final disposition were insufficient to trigger the speedy trial protections of the IADA because, at the time that they were made, no “information, indictment, or complaint” had yet been filed and, in any event, the requests were not substantially compliant with the requirements for a request for a final disposition under the IADA. The petitioner’s speedy trial rights under the IADA were not violated in these circumstances. We therefore deny the petition.
RAY, SWANSON, and MAKAR, JJ., concur.