# FIFTH DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

Case No. 5D2024-0300
LT Case No. 2021-CF-009878-A

_____

ALONZO B. HUNTER, III,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Duval County.
Tatiana Salvador, Judge.

Matthew J. Metz, Public Defender, and Brian Hyer, Assistant
Public Defender, Daytona Beach, for Appellant.

James Uthmeier, Attorney General, and Virginia Chester Harris,
Senior Assistant Attorney General, Tallahassee, for Appellee.

August 1, 2025

EDWARDS, J.

Appellant, Alonzo B. Hunter, argues that the failure to bring
him to trial within 180 days from receipt of his Interstate

Agreement on Detainers ("IAD")[1] request, and the further failure to comply with the speedy trial provisions of Florida Rule of Criminal Procedure 3.191 as he was not brought to trial within the 10-day recapture window, entitle him to complete, permanent discharge of the possession of cocaine and other charges brought against him.[2] While there were certain issues regarding the IAD and Rule 3.191, the proverbial straw that broke the camel's back was the improper calculation of time under Florida Rule of General Practice and Judicial Administration 2.514, which resulted in the recapture-period trial commencing two days too late. Because the failure to bring Appellant to trial in a timely fashion is attributable only to the State and trial court, he is correct. We are compelled to reverse and remand with instructions for the trial court to forever discharge Appellant from the drug charges to which he pled no contest while reserving his right to appeal. We explain below why the law dictates this result.

*Initial Factual and Procedural Background*

On November 10, 2021, Appellant was charged in Duval County by way of information with sale, manufacture, or delivery of cocaine (count 1); possession of cocaine (counts 2 and 3); possession of a controlled substance (count 4); possession of less than twenty (20) grams of cannabis (count 5); and resisting an officer without violence (count 6). Following a *Faretta*[3] hearing, the trial court granted Appellant's request of self-representation with stand-by counsel.

When Appellant failed to appear for a hearing in Duval County on January 5, 2022, the court issued a warrant for his

---

[1] § 941.45, Fla. Stat. (2021). It is also sometimes abbreviated IADA.

[2] The State previously nolle prossed Appellant's charges of sale, manufacture, or delivery or cocaine; possession of a controlled substance; possession of cannabis; and resisting a law enforcement officer without violence.

[3] *Faretta v. California*, 422 U.S. 806 (1975).

arrest. It turns out that Appellant had not simply run off and skipped his Duval County court date. Instead, on November 29, 2021, he was arrested in Florida on an Atlanta, Georgia warrant. He was transferred from the custody of the Jacksonville Sheriff's Office ("JSO") to Atlanta law enforcement on December 13, 2021, and transported to Georgia. On January 10, 2022, Appellant sent a letter to the Duval County court informing it that he had been incarcerated in Georgia since November 2021.

While still imprisoned in Georgia, Appellant made a demand for speedy trial which was mailed February 4, 2022, and filed in the Duval County Clerk of Court's office ten days later. On March 15, 2022, the JSO lodged a detainer which requested the Georgia authorities to place a hold on Appellant based on the charges described above. The JSO advised that it would extradite Appellant if the Georgia authorities confirmed his identity. Additionally, the JSO requested information as to where Appellant would be held pending extradition to Duval County.

*Interstate Agreement on Detainers*

It seems logical at this point to discuss the IAD in some detail. The IAD is a compact entered into by the federal government, forty-eight states, two territories, and the District of Columbia to establish clear procedures for resolution of one jurisdiction's outstanding but untried charges against a prisoner in the custody of a different jurisdiction. *Monroe v. State*, 978 So. 2d 177, 179 (Fla. 2d DCA 2007). Article I of the IAD notes that such untried charges underlying detainers can interfere with programs and treatments otherwise available to assist with rehabilitating the prisoner. § 941.45(I), Fla. Stat. A related situation exists when a state wants to resolve charges pending against a defendant imprisoned outside their jurisdiction. The IAD addresses both concerns.

If a prisoner, such as Appellant, who is imprisoned in one party state (Georgia the "sending state" per Article II(b) of the IAD) wishes to resolve any untried indictment or information pending in another party state (Florida the "receiving state" per Article II(c) of the IAD) that has lodged a detainer against him, Article III of the IAD permits the prisoner to initiate the process

3

by sending a formal written notice or request for transfer and resolution of charges to the receiving state. *Id.* § 941.45(III)(a). The IAD requires the prisoner to provide or send a written notice and request for disposition to the warden or other corrections official having custody over him. The appropriate official must provide a signed certificate "stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner." *Id.*

The IAD next provides that the warden or other official having custody of the prisoner "shall promptly forward [the prisoner's written notice and request for final disposition] together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested." *Id.* § 941.45(III)(b). Once the prisoner's conforming notice has been delivered to the prosecutor and appropriate court in the receiving state, the IAD provides that the prisoner shall be brought to trial in the receiving jurisdiction within 180 days, subject to any continuances granted for good cause. *Id.* § 941.45(III)(a). If the prisoner is not brought to trial within that time period, the "indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing same with prejudice." *Id.* § 941.45(III)(d).

There is also a procedure available under Article IV of the IAD for the receiving state, rather than the prisoner, to initiate the process by requesting the prisoner to be transferred to its state for trial. *Id.* § 941.45(IV)(a). When initiated by the state, trial must be commenced within 120 days of the prisoner's arrival in the receiving state. *Id.* § 941.45(IV)(c).

*Appellant's IAD Paperwork*

On September 15, 2022, Appellant prepared a formal, written, signed, and witnessed IAD request for transfer and final disposition using the appropriate IAD Form II, which was directed to both the Assistant State Attorney in Jacksonville, Florida prosecuting his case, Jalisa Curtis, and to the "Clerk of Duval

4

County Superior Court, Jacksonville, FL."[4]  On September 19, 2022, the Georgia prison warden, Steven Perkins, having custody of Appellant filled out and signed IAD Form III, which provided all the necessary IAD information.  Also on September 19, 2022, Warden Perkins filled out and signed IAD Form IV titled "Offer to Deliver Temporary Custody," which was also directed to Jalisa Curtis.

Appellant's formal IAD request for transfer and final disposition of the outstanding Duval County charges was mailed to the State Attorney's office in Duval County, which received it on November 1, 2022, and memorialized its receipt and importance in an inter-office memorandum that was filed with the clerk of court on November 9, 2022.

Three days after receiving Appellant's IAD formal request, on November 4, 2022, the State prepared its own request, signed four days later by the same judge who presided over the balance of Appellant's case, pursuant to Article IV of the IAD requesting Georgia to transfer Appellant to Duval County to stand trial.

### *April 30, 2023 IAD Trial Deadline Date*

In its interoffice memorandum, the State noted that it had 180 days from its November 1, 2022 receipt of Appellant's IAD request within which to obtain Appellant and bring him to trial on the pending Duval County charges.  The State set forth in its interoffice memorandum that April 30, 2023 was the trial deadline.  The trial court, the State, and Appellant consistently agreed that the 180-day IAD trial deadline was indeed April 30, 2023, *if* the IAD transfer had been initiated by Appellant, rather than the State.

During a hearing held January 2, 2024, the trial court heard argument and reviewed the available evidence to determine who

---

[4] Previously, Appellant had made several less formal requests by letter and motion to be transferred from Georgia to Florida to resolve the Duval County charges.  He does not claim that they were sufficient to trigger the IAD time period.

5

initiated the IAD transfer. The State first advised the trial court that Appellant made the IAD request, then the State candidly admitted that it did not know whether it or Appellant initiated the IAD transfer. Later in that same hearing, the State asserted that it, rather than Appellant, had initiated the IAD transfer based on the IAD request prepared by the State on November 8, 2022.

Based upon the evidence before it, the trial court found that "it is clear that" Appellant had initiated the transfer by the submission of his formal IAD request. It noted that Appellant's IAD request was received by the State on November 1, 2022, prior to the State preparing and filing its own IAD request to Warden Perkins nearly a week later. Thus, the trial court consistently used April 30, 2023 as the IAD trial deadline.

*Proceedings After Appellant's Return to Florida*

The record is unclear, as acknowledged by the trial court, as to why Appellant was not transported to Florida from Georgia until March 8, 2023. At that time, seven weeks remained before reaching the IAD trial deadline.

Commencing in March 2023, Appellant was represented in Duval County by attorney Cobbin. At a hearing on May 10, 2023, ten days (10) after the 180-day IAD trial deadline had expired, Appellant appeared and told the court that he had filed a request for transfer and final resolution of the Duval County charges pursuant to the IAD and for speedy trial, but Cobbin had not adopted or pursued Appellant's pro se motions. During that same post-expiration hearing, Appellant's counsel agreed with the State to a trial period commencing on June 26, 2023. However, the trial did not take place in June because attorney Cobbin requested and received a continuance. Appellant discharged Cobbin as his counsel in mid-September 2023 because of Cobbin's failure to adopt and pursue Appellant's pro se pleadings regarding speedy trial and the IAD.

6

On December 28, 2023, Appellant's replacement counsel, attorney Edwards[5], filed a motion to dismiss, or in the alternative, a motion for reconsideration, in which Appellant argued that the case should be dismissed because he was not brought to trial within the time frame dictated by the IAD. However, Appellant never filed a document specifically titled "Notice of Expiration of Speedy Trial Time."

At the January 2, 2024 hearing, the trial court entertained argument on the IAD issue, noting that it had not previously been the subject of any hearing, despite the issue having been discussed at other hearings. After finding that Appellant initiated the IAD request, the court went on to deny his earlier-filed motion to suppress. Acknowledging that Appellant had asserted that speedy trial had run, the trial court scheduled trial to commence on January 16, 2024. The court advised the parties on the record that it arrived at that trial date by excluding weekends in its computation of the 10-day speedy trial recapture period.

Jury selection commenced on January 16, 2024. On January 17, 2024, Appellant pled no contest to one count of possession of cocaine in return for the State nolle prossing the remaining charges. When entering his plea, he specifically reserved the right to appeal the denial of his motions to suppress and dismiss based on speedy trial and IAD violations. The court and the State agreed that those were dispositive rulings.

Appellant's plea was accepted, the trial court adjudicated him guilty, and sentenced him to 318 days in jail with credit for 318 days' time served. This timely appeal followed with Appellant seeking reversal based on the interplay of the IAD, speedy trial, and the miscalculation of the recapture period.[6]

---

[5] Despite sharing the same last name, counsel and the author of this opinion are not related.

[6] Appellant also seeks review of the denial of his motion to suppress; however, our decision on the other issues renders that moot.

*Substantial Compliance with the IAD*

As noted above, the trial court found that it was Appellant who initiated the IAD transfer, the 180-day deadline for taking him to trial was April 30, 2023, and he was not tried by that date. The trial court noted that Appellant had not sought any continuance of trial prior to the expiration of the 180-day IAD deadline. On appeal, the State does not directly attack any of those findings. Instead, it argues that Appellant did not adequately comply with the procedural requirements of the IAD because it was sent only to the State Attorney's office and not to the court. From that point, it next argues that if Appellant's IAD was noncompliant, then it did not trigger the 180-day deadline that expired on April 30, 2023.

The IAD is statutory and any request for transfer and final disposition must comply with its requirements. However, Florida has recognized that substantial compliance with the IAD is sufficient. "The issue of strict versus substantial compliance with the requirements of section 941.45(3)" was first specifically addressed in Florida in *State v. Roberts*, 427 So. 2d 787, 789 (Fla. 2d DCA 1983). The court in *Roberts* noted that "[a] majority of the foreign jurisdictions which have addressed the issue have found that substantial compliance by a defendant can be sufficient to invoke the benefits of the IADA." *Id.* The Second District then quoted from a Missouri case to explain why substantial compliance with the IAD is sufficient:

> The courts have generally held that the [IAD] does not require literal and exact compliance by the prisoner with the directions of the [IAD] in order to avail itself of its benefits. If the prisoner makes a good faith effort to bring himself within the [IAD's] purview, and omits nothing essential to the [IAD's] operation, then his failure of strict compliance will not deprive him of its benefits.

*Id.* at 790 (quoting *State ex rel. Saxton v. Moore,* 598 S.W.2d 586, 590 (Mo. Ct. App. 1980)).

In *Roberts*, the defendant had sent a series of letters and handwritten forms invoking the IAD and requesting transfer from

his imprisonment in New York to Florida for final disposition of charges filed against him in a Pasco County, Florida information. *Roberts*, 427 So. 2d at 789. Unlike Appellant in our case, Roberts did not use the official IAD forms and when it came to providing the information regarding his New York prison term, jail credits, parole status, and the like, he had provided the Pasco County State Attorney's office with a memo which he had received from the New York authorities. *Id.* There was no certificate from the warden or other official, and Roberts sent the IAD request himself, rather than having the New York warden sign and send it. *Id.* Technically, Roberts' request was not fully compliant with the IAD. *Id.*

However, the Second District found that Roberts had substantially complied with the statutory requirements which provided Pasco County with the information it needed to proceed. *Id.* at 790. It noted that

> [t]hese documents informed the Pasco County officials which charges were at issue, notified them of Roberts' current place of incarceration, requested final disposition of the charges pursuant to the IADA, and waived extradition. The memorandum from the New York prison officials to Roberts, which Roberts sent to the Pasco officials, contained the information which is usually supplied in a certificate of inmate status.

*Id.*

In our case, the trial court noted that, "the State has not contended that the Defendant's September 2022 documents were in any way deficient or not in substantial compliance with [the] IAD." The court also remarked that Appellant's formal IAD request may not have been sent by certified mail, return receipt; however, given that the State Attorney's office had acknowledged receipt in the November 1, 2022 interoffice memorandum, the trial court did not see that as anything to be concerned about. Nor has the State raised either of those two points to support its claim that Appellant's formal request for transfer and final disposition did not substantially comply with the IAD.

The State acknowledges that it received copies of Appellant's formal request; however, it points out that the request was not simultaneously served on the court as required by the IAD. *See* § 941.45(III)(b). For the sake of argument, that may have been technical noncompliance with the IAD.

The trial court in its written order noted that no copy of the IAD papers had been served directly on it; however, it nonetheless found that Appellant had "substantially complied with the dictates of Article III." The State disagrees with the trial court's ruling and claims that this oversight caused Appellant's request to "fall off its radar," meaning that Appellant was not in substantial compliance. This argument ignores the fact that the State attached a full copy of Appellant's entire formal IAD request with all the fully executed forms to its interoffice memorandum, which it filed with the court on November 9, 2022, confirming at the very least, actual knowledge by the State and constructive knowledge by the trial court.

The State's argument that Appellant "fell off the radar" also ignores the fact that Appellant made several informal requests, by motion to the Duval County Circuit Court, before November 1, 2022, seeking transfer from Georgia to Florida for final disposition of the Duval County charges.[7] That argument further ignores that Appellant filed a "Motion For Production Order To Resolve Pending Charges" with the Duval County Clerk of Court on February 27, 2023, in which he recited that he was imprisoned in Georgia and had previously filed a demand for speedy trial along with an IAD request with the Duval Clerk of Court.

The State's "fell off the radar" claim is belied by the fact that Appellant additionally raised the IAD matter when he appeared at a hearing on May 10, 2023, before the same judge that presided over the rest of his case, saying that he had filed IAD forms "specifically for getting me transferred here for this matter."

---

[7] As Appellant has not asked us to determine whether any of these informal requests pre-dating his formal IAD request substantially complied so as to start the 180-day IAD clock running earlier, we decline to consider that issue.

10

Appellant advised the judge that he had filed the IAD with the clerk of court on November 9, 2022, and that the 180 days for him to be tried had expired the day before this hearing.  The judge's trial clerk confirmed that Appellant's IAD papers had been filed in the clerk's office on that date, and a copy was printed out for the trial court.  That same judge advised that although she had not seen Appellant's formal IAD request prior to the May 10, 2023 hearing, the clerk's office had forwarded various pleadings to her that Appellant had filed during his absence from Florida.  The judge also noted that she had provided copies of the IAD statute to Appellant on more than one occasion.

"The 180-day [IAD] period is generally held to begin to run when the request for final disposition is received by the prosecuting authorities." *Fuente v. State*, 549 So. 2d 652, 655 (Fla. 1989) (citation omitted).  In *Saxton*, the Missouri case quoted in *Roberts*, the defendant had sent appropriate IAD request papers to the prosecutor but failed to copy the court.  *Saxton*, 598 S.W.2d at 588.  That court held that the prosecutor had sufficient information to proceed and had waived that non-compliance as it accepted temporary custody of Saxton from the sending authority (a federal prison) for the purpose of prosecuting him on the Missouri charges without objecting to the defendant's failure to serve the IAD papers on the court.  *Id.* at 591.  We acknowledge that this Missouri case is not binding upon us and we further acknowledge that there were additional factors at work in *Saxton* that aren't present here.[8]

It may be helpful to consider cases in which the defendant's attempted, but incomplete compliance with IAD, was found to be lacking.  In *Welch v. State*, the First District determined the defendant's IAD papers were never forwarded from Georgia, where he was imprisoned, to the appropriate Florida officials.  528 So. 2d

---

[8] In *Saxton*, an intern at the prosecutor's office replied to a letter from Saxton and provided instructions on how to pursue an IAD transfer.  The intern's letter to Saxton did not include the instruction to serve copies of the papers on the court.  Saxton followed the intern's instructions to the letter.  *State ex rel. Saxton v. Moore,* 598 S.W.2d 586, 592 (Mo. Ct. App. 1980).

1236, 1236 (Fla. 1st DCA 1988).  It was not clear whether that failure was by the Georgia authorities or Welch, but it was not the fault of the prosecutor in Florida; thus, he was not entitled to discharge.  *Id.* at 1237.

In *State v. Fay*, the Fourth District found that Fay was not entitled to discharge under the IAD because his request was not in substantial compliance.  763 So. 2d 473, 475 (Fla. 4th DCA 2000).  Fay's request did not contain a certificate from the prison official in whose custody he was; it did not provide information regarding his remaining term of commitment, his gain time or parole status; nor was it sent certified mail.  *Id.* at 474–75.  In that case, the State had also promptly moved to strike Fay's request for discharge as noncompliant.  *Id.* at 475.

In *Dozier v. State*, the First District found that Dozier had not sufficiently complied with the IAD.  175 So. 3d 322, 326 (Fla. 1st DCA 2015).  First, he had made two requests of the South Carolina prison authorities which were not transmitted to Florida.  *Id.* at 324.  Second, none of Dozier's IAD subsequent requests were served on the prosecuting authority, i.e., the State Attorney or the court.  Instead, they had been served on the JSO.  *Id.* at 326.  Third, Dozier's IAD request lacked the certificate from the correctional institution advising of the charges, time remaining, gain time, parole status, and so forth.  *Id.* at 326–27.  Fourth, at the time Dozier made his requests, there was a warrant, but no information or indictment had been filed.  *Id.* at 325.  The First District held that because Dozier had not substantially complied with the IAD he had not started the 180-day period to run.  *Id.* at 327.

Here, Appellant unmistakably invoked the IAD, made a good faith effort to comply with the IAD, provided the State Attorney with all the information called for by the IAD, and effected his transfer to Duval County to stand trial.  We find that he substantially complied triggering the 180-day IAD period on November 1, 2022, and expiring on April 30, 2023.

*Speedy Trial Issue*

Under the IAD, Appellant should have been tried within 180 days of November 1, 2022, the day the State Attorney's office

received it, absent continuances, as the trial court found that it was Appellant rather than the State, who initiated the transfer. It is clear that given the expiration of the 180-day trial date deadline would have been April 30, 2023, Appellant was entitled to discharge and dismissal of those charges with prejudice if the IAD were to be considered in isolation.

However, the IAD does not operate in a vacuum. The Florida Supreme Court has held that Florida's speedy trial rule, Rule 3.191, applies to IAD matters. *Vining v. State*, 637 So. 2d 921, 925–26 (Fla. 1994); *see also State v. Garza*, 807 So. 2d 790, 792–93 (Fla. 2d DCA 2002). The Rule protects the State from "surprise" dismissals based upon technical, inadvertent speedy trial violations. *Monroe*, 978 So. 2d at 184. Rule 3.191 requires a defendant to file a pleading entitled "Notice of Expiration of Speedy Trial Time" and to serve a copy on the prosecuting authority. Fla. R. Crim. P. 3.191(h) (2022). That rule mandates that a hearing must be held within five (5) days to schedule a trial, which must commence within ten (10) days. Fla. R. Crim. P. 3.191(p)(3).[9] This is often referred to as the "recapture" period or window. *State v. Nelson*, 26 So. 3d 570, 574 (Fla. 2010). Rule 3.191 "is not self-executing and requires a defendant to take affirmative action to avail him—or herself of the remedies afforded under the rule based on the State's failure to comply with the time limitations." *Id.* (citing *State v. Clifton*, 905 So. 2d 172, 175 (Fla. 5th DCA 2005)).

The trial court entered a written order on January 19, 2024, adding detail to its oral ruling that denied Appellant's motion to suppress. In that same order, the court set forth its speedy trial and IAD-related findings, including that Appellant had initiated the IAD transfer and substantially complied with the requirements of the IAD, which started the 180 days running for his trial to commence. The court determined that the IAD deadline for Appellant's trial was April 30, 2023 and had expired before he was set for trial. The court noted that Appellant's failure to have

---

[9] Florida Rule of Criminal Procedure 3.191(p) has since been revised in several respects, one of which makes the recapture period thirty (30) days now, instead of ten (10).

earlier served a notice of expiration of speedy trial time thwarted his right to immediate dismissal of the Florida charges.

However, in that January 19, 2024 order, the trial court treated Appellant's December 28, 2023 motion to dismiss and for reconsideration, which clearly raised IAD and speedy trial issues, as his notice of expiration of speedy trial time, thereby triggering the process and time periods set forth in the then-existing version of Rule 3.191(p)(3).

*Computation of Time Error*

The trial court noted that it had conducted a hearing on January 2, 2024, following the filing of Appellant's motion on December 28, 2023; thereby within the initial five-day window provided by the Rule. However, as noted above, Appellant's trial did not commence until January 16, 2024. In calculating January 16, 2024 as the deadline for commencing trial within the recapture period, the trial court announced that it excluded weekends from its ten-day count. Appellant correctly argues that the trial court erred in its exclusion of weekend days.

Florida Rule of Criminal Procedure 3.040 states that, "[c]omputation of time shall be governed by Florida Rule of General Practice and Judicial Administration 2.514 (2021), except for the periods of time of less than 7 days contained in rules 3.130, 3.132(a) and (c), and 3.133(a)." Because the setting of the trial date within the recapture period involved more than seven days, Florida Rule of General Practice and Judicial Administration 2.514 governed. That rule provides, in pertinent part:

(a)      Computing Time. The following rules apply in computing time periods specified in any rule of procedure, local rule, court order, or statute that does not specify a method of computing time.

(1)      Period Stated in Days or Longer Unit. When the period is stated in days or a longer unit of time:

(A)      begin counting from the next day that is not a Saturday, Sunday, or legal holiday;

14

(B)   count   every   day,   **including   intermediate Saturdays, Sundays, and legal holidays**; and

(C)   include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, or falls within any period of time extended through an order of the chief justice under Florida Rule of General Practice and Judicial Administration 2.205(a)(2)(B)(iv), the period continues to run until the same time on the next day that is not a Saturday, Sunday, or legal holiday and does not fall within any period of time extended through an order of the chief justice.

Fla. R. Gen. Prac. & Jud. Admin. 2.514 (2021) (emphasis added).

In this case, the Rule 3.191 hearing to schedule trial was held on Tuesday, January 2, 2024.  According to Rule 2.514(a)(1)(A), one would begin counting the ten days from the next day that is not a weekend or holiday.  That would have been Wednesday, January 3, 2024.   From there, one must count every day, *including* intermediate weekends and legal holidays.  Fla. R. Gen. Prac. & Jud. Admin. 2.514(a)(1)(B) (emphasis added).   Employing that computational procedure, the ten-day recapture period expired on Friday, January 12, 2024; however, Appellant was not brought to trial until Tuesday, January 16, 2024.

Because Appellant was not tried until January 16, 2024, outside the ten-day recapture window from the January 2, 2024 hearing, Appellant was entitled under Rule 3.191 and the IAD to be forever discharged from the Duval County charges.   Our analysis does not end here because there is yet another matter to consider.

*Waiver of Speedy Trial and IAD Rights vs. the Nullity Rule*

The State argues that Appellant waived his right to be tried or discharged pursuant to the IAD because Appellant's counsel affirmatively agreed on May 10, 2023, to a trial date of June 26, 2023, which was outside the 180-day IAD trial deadline.  The trial

15

court noted that during Cobbin's representation of Appellant, the case was set for trial on four occasions and continued four times—twice at the request of Appellant and twice by the State.

Relying upon *Johnson v. State*, 442 So. 2d 193 (Fla. 1983), the State argues that by agreeing to a trial date beyond the 180-day deadline of April 30, 2023, Appellant waived his speedy trial rights under the IAD. The Florida Supreme Court in *Johnson* clearly held that the IAD trial deadline, like a defendant's right to speedy trial pursuant to Rule 3.191 and article I, section 16 of the Florida Constitution, is neither unwaivable nor self-executing. *Id.* at 196.

In *Roberts*, the Second District rejected a similar claim, finding that the IAD time period was not tolled by Roberts' motion for continuance that was made after the IAD time limit had already expired. *Roberts*, 427 So. 2d at 790. More recently, *Nelson*, cited by the State, engaged in a detailed analysis regarding when a defendant's request for continuance may impact the exercise of his or her speedy trial rights guaranteed by the state and federal constitutions and rule 3.191. 26 So. 3d at 574. When "rule 3.191 was originally promulgated in 1971, the State was *not* afforded the benefit of a recapture period." *Id.* at 575. "If the default period expired, the defendant was generally entitled to automatic discharge upon motion, provided that the defendant was continuously available for trial and an extension of time had not been ordered." *Id.*

When the Rule was amended in 1984, it eliminated automatic discharge and created the recapture period so as to provide a remedy for a mistaken failure to bring the defendant to trial within the default period. *Id.* "In other words, the recapture period illustrates the principle that a defendant has a right to speedy trial, not a right to speedy discharge without trial." *Id.* at 576. A defendant may waive the right to speedy trial explicitly by filing a specified notice. *Id.*

A waiver of speedy trial may also be implied, even presumed, when a defendant seeks a continuance, making him unavailable for trial. *Id.* (citing Fla. R. Crim. P. 3.191(j)(3)). The timing of the request for a continuance is relevant. "It is clear that a pre-expiration continuance [requested by the defendant] operates as a

16

waiver [of speedy trial rights] . . . ." *Id.* The Florida Supreme Court went on to note that some courts have treated post-expiration defense continuances as a nullity, meaning that there was no waiver of speedy trial. *Id.* at 577. After reviewing several "nullity" rule cases, the supreme court noted that, "the nullity principle is inapplicable where the State is entitled to the recapture period because the defendant is not subject to automatic discharge." *Id.* at 578.

Following the discussion of several other nullity rule cases, the supreme court then analyzed *Ryan v. State*, 768 So. 2d 19 (Fla. 3d DCA 2000), which has more than a few similarities to this case. Citing to *Ryan*, the supreme court noted that "the defendant requested a post-expiration continuance, which was granted." *Nelson*, 26 So. 3d at 578 (citing *Ryan*, 768 So. 2d at 20). The defendant then filed a notice of expiration of speedy trial. *Id.* There was no "indication [in *Ryan*] that the effect of the continuance was considered at that time." *Id.* "The trial court scheduled a trial during the recapture period, but the State still failed to bring the defendant to trial within that time." *Id.*

The supreme court agreed with the Third District that Ryan was entitled to discharge, "despite the post-expiration continuance." *Id.* The supreme court explained that

> [t]hough the post-expiration continuance initially operated as a waiver because the State was entitled to the recapture period, this decision is distinguishable from *Nelson*[10] because the State failed to assert the waiver issue prior to the case being set for trial. Furthermore, the State failed to bring the defendant to trial within the recapture period. Thus, the continuance [at the defendant's request] operated as a nullity because it was not the principal reason the trial could not [timely] commence.

*Id.* at 578–79.

---

[10] *State v. Nelson*, 993 So. 2d 1072 (Fla. 4th DCA 2008).

17

The supreme court concluded its discussion of *Ryan* by describing it as a circumstance "in which the nullity rule is still applicable under the current speedy trial rule." *Id.* at 579.

Applying *Nelson* and *Ryan* to the instant case we note the following. First, Appellant's agreement to a post-expiration trial date was made after the expiration of the 180-day IAD trial deadline. Second, Appellant's first request for continuance was likewise made post-expiration. The timing of any further continuances requested by the State or defense do not seem relevant at this point. Third, Appellant then filed his motion to dismiss and for reconsideration on December 28, 2023, which the trial court treated as a notice of the expiration of speedy trial. Fourth, nobody raised, below, Appellant's continuances as a bar to his speedy trial rights. Fifth, the trial court did conduct a hearing within five days as provided by Rule 3.191 to schedule trial. Sixth, because of the trial court's time computation error, Appellant was not brought to trial within the actual recapture period.

We conclude that taken separately or together, Appellant's agreement to a post-expiration trial date and his post-expiration motion for a continuance prior to serving his notice of expiration were not the principal reason that the trial was not timely commenced within the recapture period. Accordingly, under *Nelson*, neither operated as a waiver of his entitlement to discharge pursuant to the IAD and Rule 3.191.

*Conclusion*

For the reasons set forth above, we reverse the final judgment and remand for entry of an order dismissing the subject charges he faced in Duval County with prejudice and forever discharging Appellant.

REVERSED and REMANDED.

MAKAR, J, concurs.
EISNAUGLE, J, concurs in result with opinion.

18

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____

EISNAUGLE, J., concurring in result with opinion.

I do not join the majority's extended discussion because, in my view, we only need to decide whether the trial court correctly calculated the 10-day recapture period. The other issues are not presented to us for decision.[1]

On appeal, Appellant argues that the trial court miscalculated the 10-day recapture period under Florida Rule of General Practice and Judicial Administration 2.514. I agree.

However, were I writing on a blank slate, I would conclude that this argument was unpreserved because Appellant's counsel did not contemporaneously object when the trial judge indicated that she would set the trial outside of the recapture period. *See Overton v. State*, 976 So. 2d 536, 547 (Fla. 2007) ("To preserve error for appellate review, the general rule requires that a contemporaneous, specific objection occur at the time of the alleged error."). Instead, counsel essentially stood silent until it was too late for the trial court to correct the error. Generally, the rule on preservation does not countenance the potential for gamesmanship. *See generally Millar Elevator Serv. Co. v. McGowan*, 819 So. 2d 145, 153 (Fla. 2d DCA 2002) ("This requirement also promotes judicial economy and prevents a party from rolling the dice with the jury, confident that an unvoiced objection will garner a new trial if the verdict is unfavorable." (citations omitted)).

Nevertheless, I am bound by our supreme court's decision in *Stuart v. State*, 360 So. 2d 406 (Fla. 1978). In that case, defense counsel failed to object when the trial court set the trial beyond expiration of the speedy trial timeframe. The Court concluded:

---

[1] The State did not file a notice of cross-appeal.

By the time of the hearing on the 180th day, petitioner's constitutional right had been stretched almost to the limit. By this point defense counsel was properly more concerned with protecting petitioner's entitlement to the remedy that follows from the violation of the rule. The proper time to argue about the operation of the rule and the entitlement to a discharge is at a hearing on a motion therefor, and a motion for discharge can only be effectively made when the movant is entitled to one after the period has run. Florida Rule of Criminal Procedure 3.191(d)(1). Defense counsel was under no duty to correct the court's impression and to argue to the court that trial had to begin that day simply because he might have succeeded. This would have jeopardized his client's chances of getting the remedy for a violation of the speedy trial rule. As serious as is the duty of an attorney to keep the court apprised of its position and to advise on the ramifications of court action, the duty to promote and defend the rights and lawful interests of a client accused of crime is even weightier. In the situation we consider, no concept of a duty of open dealing before the court can justify requiring the defense to do the state's job.

360 So. 2d at 413 (asterisk omitted).

But counsel will, in some sense, "jeopardize" a potential remedy anytime an objection is timely raised. That is no reason to jettison the rule on preservation. As I see it, a defendant has no "right and lawful interest" in allowing, through silence, a speedy trial violation to occur based on the trial court's misunderstanding of the law. A defendant's right to discharge materializes at the time a violation actually occurs. Were I not bound by *Stuart*, I would apply the rule on preservation and affirm.

21